Barbara COLOMAR, on behalf of herself and all others similarly situated, Plaintiff,

v.

MERCY HOSPITAL, INC., and CATHOLIC HEALTH EAST, INC., Defendants.

No. 05–22409–CIV–SEITZ.

United States District Court, S.D. Florida.

Nov. 17, 2006.

Bryan Anthony Vroon, Vroon & Crongeyer, Atlanta, GA, Caryn Becker, Kelly Dermody, Richard Heimann, Lieff Cabraser Heimann & Bernstein, San Francisco, CA, Dewitt M. Lovelace, Lovelace Law Firm, Destin, FL, Don Barrett, Barrett Law Offices, Lexington, MS, Joseph E. Bartel, Sarasota, FL, Sidney A. Backstrom, Scruggs Law Firm PA, Oxford, MS, Theodore Jon Léopold, Ricci Leopold, Palm Beach Gardens, FL, for Plaintiff.

Alan Richard Poppe, Buchanan Ingersoll, Christina Maria Ceballos–Levy, Robert Donald Wike Landon, III, Thomas H. Seymour, Kenny Nachwalter Seymour Arnold Critchlow & Spector, Laura Ganoza, Buchanan Ingersoll, Lewis Warren Fishman, Miami, FL, Steven E. Bizar, Buchanan Ingersoll, Philadelphia, PA, for Defendants.

### ORDER DENYING DEFENDANT MERCY HOSPITAL'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

SEITZ, District Judge.

THIS MATTER is before the Court on Defendant Mercy Hospital, Inc's ("Mercy's") Motion to Dismiss the Second Amended Complaint ("SAC") [DE–55].[1] In an earlier, partial ruling on this Motion, the Court dismissed Counts Three and Four alleging unjust enrichment and a violation of the duty of good faith and fair dealing. *See* DE–90. The Court also partially dismissed Count Two alleging a violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") insofar as that claim involved allegations of deceptiveness on Mercy's part. *See id.* The Court reserved ruling on Count One (breach of contract) and Count Two (FDUTPA-unfairness), however, and requested supplemental briefing on the question of what legal standard governs Plaintiff's allegations of unreasonable pricing, which forms the basis for Plaintiff's breach of contract and FDUTPA claims.

Having now considered the additional briefing, and reviewed the SAC in a light most favorable to Plaintiff and drawn all reasonable inferences therefrom in Plaintiff's favor, the Court finds that the allegations of unreasonable pricing in the SAC meet Plaintiff's burden of pleading claims for breach of contract and violation of FDUTPA. Therefore, Mercy's Motion to Dismiss is denied.

### I. Factual and Procedural Background

This is a putative class action filed on behalf of uninsured patients at Mercy Hospital. Plaintiff was a patient at Mercy between March 5–6, 2003. SAC [DE–47] ¶¶ 5, 41–42. At the time of her admission to Mercy, Plaintiff was uninsured and did not qualify for Medicaid or other assistance programs. SAC ¶¶ 5, 41. Plaintiff came to Mercy due to shortness of breath.

---

1. On November 8, 2006, the Court granted co-Defendant Catholic Health East's Motion for Summary Judgment [DE–122], thereby mooting CHE's Motion to Dismiss [DE–53].

*Id.,* ¶¶ 5, 42. She had a chest x-ray, ventilation/perfusion lung scan and an EKG. *Id.* She was treated with steroids, oxygen and given respiratory therapy. *Id.* Her entire stay lasted approximately 26 hours. *Id.* Plaintiff does not allege any deficiency in the care she received from Mercy. Rather, her complaint targets Mercy's billing policies and practices.

Prior to receiving any treatment or services from Mercy, Plaintiff signed an "Authorization and Guarantee" form (the "contract") in which she agreed to pay all bills not otherwise covered by insurance or other means. SAC ¶ 66. However, the services she would need and the prices she would pay were unspecified in the contract. *Id.* ¶ 65. After Plaintiff was discharged from the hospital, she received a bill from Mercy totaling $12,863.00. SAC ¶ 43. As of the filing of the SAC, Plaintiff had made payment on the bill in the amount of $1,750.00. SAC ¶ 45. The balance was sent to collections. *Id.*

In her First Amended Complaint ("FAC"), Plaintiff alleged that the bill she received from Mercy was inflated and unfair when compared to the rates charged to, and accepted from, patients with insurance or patients covered by Medicaid or Medicare. *See* FAC ¶ 45. She argued that Mercy's differential pricing alone was sufficient to constitute a breach of contract because Florida law requires the amount of an open pricing contract to be reasonable. *See Payne v. Humana Hosp.,* 661 So.2d 1239, 1242 (Fla. 1st DCA 1995); *Mercy Hosp. v. Carr,* 297 So.2d 598, 599 (Fla. 3rd DCA 1974). While the Court agreed with Plaintiff that an open pricing term (like the price of Mercy's services in the contract) must be reasonable, Florida law requires more than mere allegations of differential pricing to establish unreasonableness. *See Hillsborough County Hosp. Auth. v. Fernandez,* 664 So.2d 1071, 1072

(Fla. 2d DCA 1995) ("evidence of these contractual discounts [to Medicare patients and the like], standing alone, is insufficient to prove that Tampa General's charges were unreasonable."). Therefore, the Court dismissed Plaintiff's FAC, but granted leave to re-plead with additional facts which would establish unreasonableness. Because the FDUTPA claim relied on similar allegations of unreasonableness, the Court dismissed that count but also granted leave to replead.

Thereafter, Plaintiff filed her SAC, adding the following factual allegations regarding the reasonableness of Mercy's prices:

(1) Plaintiff was charged nearly $12,863 for medical services, while the actual costs of the services were only $2,098;

(2) CHE hospitals (of which Mercy belongs) generally charge uninsured patients rates at 370% of Medicare reimbursement rates;

(3) Mercy in particular charges uninsured patients rates at 450% of Medicare reimbursement rates;

(4) CHE hospitals rank among the top 13% of all hospitals nationwide in charges (including both for-profit and non-profit hospitals);

(5) CHE's cost-to-charge ratio is 394%, meaning that on average CHE hospitals charge almost four times their costs to uninsured patients;

(6) CHE hospitals rank in the top 10% of hospitals nationwide in terms of cost-to-charge ratio.

*See* Second Amended Complaint [DE–47] ¶¶ 30–32, 43–45. Mercy responded with the instant Motion to Dismiss, contending that these new allegations do not cure Plaintiff's complaint.

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move the Court to dismiss a claim for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. Such a motion does not decide whether the plaintiff will ultimately prevail on the merits, but instead whether she has properly stated a claim and should therefore be permitted to offer evidence to support it. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The rule provides that dismissal is inappropriate unless "the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle h[er] to relief.' " *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). To survive a Rule 12(b)(6) motion to dismiss, a complaint generally need only provide a short and plain statement of the claim and the grounds on which it rests. *Conley,* 355 U.S. at 47, 78 S.Ct. 99. When a claim is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *Arango v. U.S. Dept. of Treasury,* 115 F.3d 922, 923 (11th Cir.1997).

## III. Analysis

### A. Unreasonable Pricing Claims

A thorough review of the case law from Florida and elsewhere leads to the conclusion that no single factor can be used to determine the reasonableness of Mercy's hospital charges. Rather, several non-exclusive factors are relevant to the inquiry. As discussed in more detail below, those factors include but are not necessarily limited to: (1) an analysis of the relevant market for hospital services (including the rates charged by other similarly situated hospitals for similar services); (2) the usual and customary rate Mercy charges and receives for its hospital services; and (3) Mercy's internal cost structure. Consideration of the SAC in light of these factors establishes that Plaintiff has stated a claim for breach of contract and violation of FDUTPA based on unreasonable pricing.

### 1. Market Analysis

Mercy argues that even with the new allegations, Plaintiff's SAC still fails to state a claim and that, in fact, the new allegations affirmatively establish that Plaintiff can plead no facts that would entitle her to relief. The thrust of Mercy's argument is that Plaintiff can *only* establish an unreasonable pricing claim by pleading and proving that Mercy's charges grossly exceed the range of prices other hospitals in the same market charge. Mercy maintains that Plaintiff concedes in ¶ 30 of the SAC that CHE's and Mercy's prices are within the range of what other hospitals charge, and therefore Plaintiff has pled herself out of court. Paragraph 30 states in full that:

> According to statistics derived from the figures that all hospitals are required to provide to the government, in 2004, CHE's Chargemaster prices—and, accordingly, the prices charged to uninsured patients—were, on average, 370% higher than Medicare reimbursement rates for non-outlier reimbursements, compared with the national average of 292%. Based upon these figures, on average, CHE's prices, and, therefore, charges to uninsured patients, fall in the top thirteen percent of all hospitals (including both for profit and not-for-profit) across the country.

Mercy's argument based on ¶ 30 fails both as a matter of fact and law. First, Plaintiff's SAC contains sufficient allegations that Mercy's charges are not "within the range" of the market. Second, and more importantly, a market analysis is not the sole measure of evaluating reasonableness.

### (a) Plaintiff's Market Allegations Are Sufficient

■ Even accepting Mercy's narrow view of proving an unreasonable pricing claim, here Plaintiff has alleged that Mercy's charges are in the top 13% of what all hospitals charge, and that Mercy's cost-to-charge ratio (a measurement of how much its charges exceed costs) is among the top 10% of all hospitals. These allegations are sufficient to show, at the pleading stage, that Mercy's charges are not "within the range" of what other hospitals charge but rather at the extreme end of the range. Although neither party has fully explained how the Court should interpret the raw statistics provided in the SAC, Plaintiff claims that they offer an apples-to-apples comparison of hospital charges throughout the county. Mercy does not take issue with this representation and, at this stage of pleading especially, the Court is willing to accept this comparison as accurate. From this, the Court can infer that Mercy charges patients like Plaintiff at the high end of what hospitals charge in general. Thus, while Mercy's charges are technically "within the range" of what all hospitals charge (because the particular statistics include all hospitals), they are, on average, so far to the high end of the range that dismissal would be inappropriate. In more concrete terms, if the allegations had shown that Mercy's charges were within the 25th–75th percentile of what all hospitals charge, then the Court might be able to conclude as a matter of law that Mercy was "within the range" of the overall market. But being in the nation's top 13% is too far above the average to so conclude. Accordingly, even if the *only* way to state a claim in this case would be to show that Mercy's charges were outside the range the market charges for similar services, the allegations in the SAC, viewed in the light most favorable to Plaintiff, meet this standard.

### (b) A Market Analysis is Only One Means of Evaluating Reasonableness

■ Furthermore, Mercy's premise, that unreasonable pricing claims can only be established by showing that prices grossly exceed the market, is far too restrictive a test of reasonableness. There is little doubt that what the market charges for similar services is one relevant measure of reasonableness. *See Bennett v. Behring,* 466 F.Supp. 689, 697–98 (S.D.Fla.1979) (granting summary judgment in favor of defendant where plaintiff offered no evidence of what other consumers paid in similar circumstances). Numerous cases from other jurisdictions support this view. *See, e.g., Doe v. HCA Health Serv. of Tenn.,* 46 S.W.3d 191, 198 (2001) (canvassing cases from other jurisdictions to conclude that " 'reasonable value [of hospital services] . . . is to be determined by considering [among other things] similar charges of other hospitals in the community.' "); *Galloway v. Methodist Hosp., Inc.,* 658 N.E.2d 611, 614 (Ind.App. 1995) (considering evidence of charges by other area hospitals in deciding reasonableness of hospital charges); *Victory Mem. Hosp. v. Rice,* 143 Ill.App.3d 621, 97 Ill.Dec. 635, 493 N.E.2d 117, 120 (1986) (inquiry into reasonableness of pricing for hospital services includes consideration of whether charges are comparable to other area hospitals). The flaw in Mercy's argument, however, is that a market analysis is

*not* the only way to evaluate reasonableness.

To support its narrow view, Mercy relies exclusively on *Bennett v. Behring,* 466 F.Supp. 689 (S.D.Fla.1979). In *Bennett,* the court analyzed whether a monthly recreational lease fee was so excessive that its was unconscionable. In an effort to stave off summary judgment, plaintiffs offered evidence that the gross fee charged was very high relative to the value of the service provided (the total annual rental fee was about one-third of the assessed value of the property in question). The court ultimately found this insufficient to defeat summary judgment because there was no proof of what other similarly situated persons had to pay for similar services. *See id.* at 698 ("there [was] no proffered evidence in [the] voluminous record to establish that the price being paid by plaintiffs grossly exceeds that being paid by other similarly situated consumers in a similar transaction."). It was not enough, in other words, that the monthly fee paid by plaintiffs was high relative to the value of the service received, which was the only evidence plaintiffs proffered. In reaching its conclusion, the court stated that a proper analysis required the court to "compare the price actually being paid by the complaining party, to the price being paid by other similarly situated consumers in a similar transaction." *Id.* at 697.

Properly read, *Bennett* stands for the proposition that without *some* evidence of the market value of the services in question, one cannot conclude from the absolute price alone that it is unreasonable. But the *Bennett* court never held, as Mercy suggests, that the *only* way to prove unreasonableness is by reference to the prices others charge. While evidence of what others in the market charge for similar services is a necessary factor in the analysis, it is not a sufficient one in and of

itself. Accordingly, the *Bennett* case stands in a similar position as *Hillsborough Co. Hosp. Auth. v. Fernandez,* 664 So.2d 1071, 1072 (Fla. 2d DCA 1995), in which the Florida appellate court held that evidence of contractual discounts to some patients, "standing alone," is insufficient to prove that the defendant hospital's charges are unreasonable. *Bennett* does not equate a market comparison with reasonableness, anymore than *Hillsborough* excluded discounted pricing as a wholly improper measure of reasonableness. The Court finds, therefore, that a market analysis is only one of several nonexclusive means of showing that hospital charges are unreasonable. *See, e.g., Doe, supra* (relying on several factors); *Rice, supra* (same); *Curnow v. Sloan,* 625 S.W.2d 605, 607 (Mo.1982) ("Although evidence of what is charged by others in the community can be considered [in analyzing the reasonableness of hospital charges], it is not dispositive.").

**B. Differential Pricing**

 In addition to a market analysis, the case law reveals that the price charged for the same services to other patients within the same hospital is also relevant to the question of reasonableness. *Payne v. Humana Hosp.,* 661 So.2d 1239, 1242 (Fla. 1st DCA 1995), makes clear that while prices charged to other patients within the same hospital (differential pricing) is not enough, "standing alone," to prove unreasonableness, the price other patients are charged may nonetheless be one piece of relevant information in the inquiry. *Payne* teaches that combined with other evidence, differential pricing might establish that certain charges are unreasonable. Cases from other jurisdictions are in accord. *See Temple Univ. Hosp., Inc. v. Healthcare Management Alternatives, Inc.,* 832 A.2d 501, 510 (Pa.Super.2003) ("Reasonable value [of hospital ser-

vices]... is the value paid by the relevant community. The relevant community in this case comprises the Hospital's patients who are covered by insurance policies and federal programs."). This factor is important in the analysis because the prices charged to other patients, and the amounts received from them, within the same system often differ, and this difference may offer some insight into the value of the actual services provided. Indeed, as the *Temple University* court explained, the reality is that the rates hospitals charge for services do not always accurately reflect the value of the services, especially when the hospital routinely accepts much less for them. *Id.* at 510. When that is the case, then simply looking at the rates charged relative to other hospitals can give a false sense of value. That is, if other hospitals grossly overcharge for services relative to their costs, then a mere side-by-side comparison of hospitals' unreasonable charges would make them appear reasonable. Such consistency, standing alone, is not synonymous with reasonableness.

Here, Plaintiff alleges that patients with insurance and government benefits receive significant discounts in the price they pay for Mercy's services. *See* SAC, ¶ 28. This suggests that the value of the services charged to Plaintiff may be significantly less than what Mercy asked her to pay. This allegation, if borne out during discovery, would be evidence in support of the conclusion that the charges imposed on Plaintiff are unreasonable.

#### C. Internal Cost Structure

 In addition to what a hospital charges others for the same services, and what the market charges in general, another relevant factor that emerges from the pertinent case law is the particular hospital's internal cost structure. *See Doe,* 46 S.W.3d at 198 (" 'reasonable value [of medical goods and services] is to be determined by considering the hospital's inter-

nal factors . . . ."); *Rice,* 97 Ill.Dec. 635, 493 N.E.2d at 120 ("any assessment of the reasonableness of a private hospital's charges must include consideration and recognition of the particular hospital's costs, functions and services . . . ."); *Ellis Hosp. v. Little,* 65 A.D.2d 644, 409 N.Y.S.2d 459, 461 (1978) (proof of the reasonable value of hospital services includes, among other things, evidence that "the cost of the hospital's operation was the basic consideration in establishing the charges for the services rendered . . ."). It makes sense to consider a hospital's internal costs in determining whether the hospital's charges are reasonable because such evidence might account for different prices that would not be fairly reflected in a simple comparison to other hospitals in the market. That is, if a hospital has additional, atypical internal costs compared to others in the market, then higher prices might still be reasonable even though those rates exceed the market price.

This analysis of internal costs does not necessarily penalize efficient hospitals with lower costs, as Mercy suggests. This is so because the appropriate analysis of reasonableness is multifaceted and does not look only at internal costs relative to price in isolation. So, for instance, a hospital with a high profit margin compared to another hospital with the same charges does not necessarily have unreasonable costs, if the increased profits derive from cost efficiencies. On the other hand, rate increases untethered to any appreciable increase in costs would raise questions about the reasonableness of the rate increases and the overall reasonableness of the charges.

Here, there are no detailed allegations regarding Mercy's internal cost structure. These are facts largely, if not entirely, within Mercy's possession and control. However, Plaintiff has alleged that the costs of her services total approximately

$2,100 and that she was charged almost $13,000 for those services. This means that Mercy, as alleged, charged Plaintiff six times what it cost Mercy to treat her. The Court can only speculate about how Mercy determined its charges based on these costs, but accepting these allegation as true, as the legal standard under Rule 12(b)(6) requires, the Court cannot conclude as a matter of law that charging 600% above costs is reasonable.

## B. Damages

■ As an additional basis for dismissal, Mercy contends that Plaintiff has not incurred damages because she has paid less than the cost of the services she has received. Plaintiff alleges that she paid $1,750 to Mercy.[2] She also alleges that the cost for those services is only $2,098, rather than the $12,863 charged to her. Thus, Mercy asserts that Plaintiff has suffered no damages and therefore cannot bring a breach of contract claim.

This argument is unconvincing, as it overlooks the fact that Mercy actually billed Plaintiff for the $12,863 and sent the bill to collections. Plaintiff is certainly aggrieved by the collections process and the threat and uncertainty of legal action to recover the full amount billed. The fact that she has not paid the full amount yet does not alter the fact that Mercy has demanded it from her. As such, the dispute as to the lawful amount owed needs to be resolved, either as a damages suit to recover any excess paid by Plaintiff, or as a declaratory judgment action to determine the lawful amount owed. *See* Fla Stat. § 86.031 (declaratory judgment action can proceed "before or after there has been a breach."). In *Payne*, for example, the Court allowed plaintiff to proceed with

a declaratory judgment action because he was in doubt about his rights under a medical service contract similar to the one here. 661 So.2d at 1242.

Similarly, in *Allstate Insur. Co. v. Kaklamanos,* 843 So.2d 885, 891 (Fla.2003), the Florida Supreme Court ruled that an insured party can sue his or her insurer for failure to pay medical expenses, even though the insured had not yet incurred any out-of-pocket expenses and the hospital had not yet brought an action to collect the debt from the insured. The *Kaklamanos* court focused, in part, on the fact that there was an alleged breach of the contract in issue, not whether the party could necessarily show out-of-pocket damages. *Id.* at 892–93 (explaining that the lower court "erred in evaluating the insured's actions ... in terms of damages, rather than looking at the actions in terms of breach of contract," and further noting that "[a]n insured may be damaged ... even if the insured has not already paid or been sued by the medical provider."). Such reasoning supports the view that Plaintiff in this case should be able to proceed with her claim of unreasonable pricing without first having to pay the full $12,863. Indeed, it makes little practical sense to make Plaintiff pay $12,863 in order to sue based on a theory that the $12,863 is an unreasonably high amount for the services.

If Plaintiff has not yet paid any more than she alleges the services cost, then this will likely have a bearing on what damages, if any, she can ultimately recover. Unlike *Payne*, where plaintiff apparently alleged that he had paid more than the reasonable amount, Plaintiff here may only be entitled to a declaration that the charges are unreasonable. If that is the

2. At the hearing on the Motion to Dismiss, Plaintiff's counsel stated than since the filing of the SAC Plaintiff has in fact made incremental payments on Mercy's bill and that in

sum she has now paid more than the amount the services allegedly cost. On a Rule 12(b)(6) motion, the Court will not consider statements outside the pleadings, however.

case, then Plaintiff will be required only to pay whatever amount is deemed reasonable.

## IV. Conclusion

Based on the foregoing, the Court concludes that several factors are relevant in the analysis of whether Mercy's charges are reasonable, including but not limited to Mercy's internal cost structure, the usual and customary rates charged and payments receives for these services, and what other hospitals in the relevant market charge for similar services. Based on an analysis of these factors and a close review of the SAC in a light favorable to Plaintiff, the Court concludes that Plaintiff has stated a claim of breach of contract for unreasonable pricing of an open pricing term in her contract with Mercy. In addition, the Court is satisfied that these allegations also meet the threshold for stating a claim under the unfairness prong of the FDUTPA. Accordingly, it is hereby

ORDERED that Mercy Hospital, Inc.'s Motion to Dismiss [DE–55] is DENIED.